We're ready to proceed with our next appeal. This is Stuart Smith versus the United States. Virgil Adams is here for Appellant Smith and Jennifer Utrecht is here for the United States. And Mr. Adams, you may proceed. Thank you, Your Honor. May it please the court. My name is Virgil Adams and I represent the appellant in this case, Stuart Smith. This is a case involving the district court's erroneous dismissal of Mr. Smith's case for lack of subject matter jurisdiction on the basis that this case involves a determination of veterans benefits and governed by the Veterans Judicial Review Act, rather than claims for medical negligence governed by the Federal Tort Claims Act. The facts, however, show otherwise. The facts clearly show that the negligence of the VA, doctors and nurses and other medical personnel in failing to time to treat Stuart Smith in the face of his concerning symptoms and subsequent diagnosis of tongue and throat cancer show a failure to adhere to the applicable standard of care as described by appellants experts and clearly shows a claim for medical negligence under the Federal Tort Claims Act. The facts are hard. Yes, Your Honor. I agree with you, the facts are hard. Here's my, here's my concern or issue with this case. We have the VJRA, we have other circuits that have construed the delay in scheduling as, as covered by the VJRA, which is the privacy jurisdiction. It seems to me that even assuming that that's true, at some point, the delay becomes so great, it can, it can cross over into being malpractice. In other words, let's say, just to take an extreme example that, that it takes the VA, which, by the way, is where your client has to go of course, five years to schedule the follow up appointment once his, once his physician identifies the probability that cancer exists and it takes them five years to schedule the follow up appointment with the ENT. Let's just assume that in five years, there's not really a debate that crosses into the realm of medical malpractice. So my question for you is number one, with respect to the other end of the spectrum. That is, these other courts outside of our circuit that have held that delays, near delays in scheduling are covered by the VJRA because they are in connection with benefits. Where do we draw the line, and what would be the standards we use to do that, assuming that there's a point where at one end, we're at, we're covered by the VJRA and at some other end, it crosses over to malpractice. Thank you, Your Honor. I think where you draw the line is first of all, whether or not this is a case, it is a case that involves whether or not the veteran is entitled to certain benefits. That is not, in this case, it is not a question about whether or not Mr. Smith was eligible for the treatment. It's a question of whether or not he timely got the treatment. We have to keep in mind that the VA is a hospital, just like any other private or public hospital in this country, and it has to adhere to the same standard of care. In this case, this was about a delay in treating a deadly disease. Mr. Smith did not apply for any benefits. If the court would look at the other cases that have focused in on delays, those have been cases where the veteran applied for a specific benefit and was either denied or there was an extremely long delay. Mr. Smith did not apply for anything. Mr. Smith sought treatment from the VA. And I think it's also important to note that the only treatment Mr. Stuart Smith got was treatment and care that was ordered by either his VA doctor, Dr. Pappalo, or the specialist at the very VA hospital sent him to. So he did not apply for any benefits. This is not a benefits case. Mr. Adams, what did the doctors do wrong? This isn't a medical malpractice case, is it? I don't see in your complaint that you allege that the doctors did anything wrong. It was the administrators at the Veterans Administration who delayed treatment ordered by the doctors. Am I incorrect about that? Respectfully, Your Honor, you are. First of all, the court has to remember that this is a factual attack on subject matter jurisdiction, not a facial attack. What did the doctors do wrong? And she ordered a non-VA care specialist because the VA did not provide this care, didn't treat cancer patients. In order to get that consult approved, it had to be reviewed by a nurse, Nurse Equimea. She reviewed it from a clinical standpoint, and she had to authorize the treatment. Not only did she authorize the treatment, but the doctor, Dr. Harrington, was the non-VA medical doctor who gave another level of review in that same department with Nurse Equimea. So here you've got a nurse and here you've got a doctor that signed off on an authorization for the ENT specialist to do two things, to evaluate Mr. Smith and then to return a recommended plan of treatment. If this is a medical malpractice case and the case went to trial, then you would have to have a doctor testify as an expert that the doctors in this case, Hoopla, Duke, and Cole departed from the standard of care expected by doctors in providing treatment? Is that? Yes, we would have to have an expert to give testimony. And Your Honor, that's why I get back to the point that this is a factual attack. I guess the problem is when I read your complaint, the way it's crafted is that it's not that the doctors did anything wrong. It's just the people who work at the Veterans Administration who had to follow through with the orders of the doctors, they delayed treatment that was ordered by the doctors. And if that's true, then it seems like the Federal Torts Claim Act is not the proper avenue. Veterans Judicial Review Act is the proper. Your Honor, but here's the point the court is missing and that the district court missed. In a factual attack on subject matter jurisdiction, you don't just look at the complaint. You have to look at the evidence. In addition to our complaint, we attached an affidavit from an expert from two experts, from a nurse and from an otolaryngologist who testified that the care and the lack of treatment that Mr. Dr. Ferris was that expert. He also testified and set forth in his deposition several instances of medical negligence in the delay and treatment of Mr. Smith. He talked about the delay in getting him the appropriate test, the delay in not getting his surgery authorized. And he also testified and set forth under sworn testimony that the delay was the cause of the tumor not being resectable because it was resectable in January of 2013. Yes, put a finer point on your position that someone other than the doctors that is the hospital as an entity could have committed malpractice, or is it your point that the doctors here, committed malpractice. And if you're, I mean, could the nurse have committed malpractice. Is it your position, who is it specifically who you're saying committed malpractice to address judge Wilson's, as I understand. Yes, and as our expert, Dr. Ferris indicated, the nurse who was in charge of authorizing this care that would be nurse equipment. Keep in mind to that part of her job was to monitor the care of the veterans, and according to another VA witness, Miss Edmondson, the VA the Dublin hospital put out a daily status report of every patient. So that the patients could be monitored, and they could the nurses could see where they were on the schedule and nurses routinely looked at that twice a day. Nurse equipment, Dr. Harrington, who also was responsible for authorizing and timely authorizing the treatment. Those two were guilty of medical negligence, as well as Dr. Ferris indicated that anyone that in was in the line of providing care for Mr. Smith. Fell below the standard of care, the radiologist, not giving him the timely pet scans not giving him the timely CT scans with contrast that would be necessary for surgery. All of these persons who were in charge of Mr. Smith's care. They fail to adhere to the applicable standard of care, and the deep, the district court fell into the same trap of analyzing this case. Just on the complaint facially and didn't totally ignore the testimony from the experts, which you have to do because this is a factual attack on subject matter, jurisdiction, and I have a question to make sure I understand the record. As I understand, you had to make an administrative claim before you could sue is that correct. Yes, Your Honor, and I'm pleased that the court mentioned that, and the December 21 and I bring this up so the government can address it in the administrative process, I have the administrative denial of your claim, as well as in the paperwork before that, there is no mention of him being ineligible or not entitled to benefits or anything. The decision by the VA on your claim is that you said the healthcare providers negligently failed to timely diagnose and negligently failed to treat the time cancer and they concluded there was no negligent or wrongful act on the part. There's nothing in there at all that brought up the issue of benefits or approval of anything, it was all about whether there was by the medical staff doctors and nurses failure to timely diagnose and failure to timely treat so we get into scheduling but Your Honor, you are exactly correct. And not only did we put the, we put the government on notice from the very beginning in the form 95 that this was a medical negligence claim, and they treated it in their response as a medical negligence claim. We also asked the government to reconsider his position. And when the government sent his letter dated. Your time has expired. May I conclude and answer the court's question please. Yes. Your Honor, when the government sentence response to our request for reconsideration, it stated that reconsideration was denied because it had had the case review by primary care physician and oncologist and an auto laryngologist, and that they did not find any issue with With respect to the care and treatment render the veteran they treated this as a medical negligence claim, and now they are trying to hide behind the Veterans Judicial Review Act and call it benefits. Thank you. Thank you, Mr Adams. You may proceed. Thank you. Good morning, Your Honors, Jennifer you tracked on behalf of the United States. That bottom. This is a very simple factual question this case is the grove of men of the plaintiff's complaint and the discovery he produced about negligence by treating medical professionals his treating physicians and treating nurses, or is it about delays that are the result of VA administrative staff who are responsible for making decisions about whether and when he is entitled to have treatment both in the VA and non VA care paid for by the VA, the district court here found based on its complete review of the complaint, and the discovery in this case that just records order specifically notes that he's also looking at the facts that were produced in discovery that the grove of men of the plaintiff's complaint is about the processing of benefits, it's about delay that happened when nurse equine a who was an administrative professional not a treating physician, but administrative professional in what's called the fee department of the VA, who makes determinations about whether the VA is going to pay for outside care and when they can pay for outside care delays attributable to her decision making process and the administrative process of scheduling and coordinating with this non VA, and non VA treatment. The district court on page 11 of the order mentions that the complaint itself talks about this authorization process more than a dozen complaints, but more than a dozen times but the plaintiff does not raise at any point, any critique with the quality of care he received from his treating physicians. In fact, I believe in the stipulation. Yes, Your Honor. What do you say in response to the back that when you as Judge Paul was noting when you do look back at the benefits decisions, not maybe not benefits decisions, but the administrative part of the complaint here. It never mentions delay, it's always talking about the quality of the services, it has three different medical professionals review the complaint. It appears that the VA itself. You this as a malpractice claim as opposed to something in connection with benefits. So, how do you respond to that. First, I'd like to be clear that the letter itself. I believe that just always always referring to is a letter that is part of the administrative exhaustion process. So, in order to bring an FCA complaint. Yes, of course, but the point is the whole reason that we exhaust complaints administratively is in case they can be taken care of by the agency, then we give the agency the first chance to address it. So yes, your honor so by agency, even sorry if the agency and addressing this complaint. Only as a malpractice claim and not at all as a benefits plane, then why shouldn't we do the same. Well so your honor, the reason I provide that background is because of course, if the agency is asked to look at this as an FCA claim it's going to not as administrative professionals as medical treating professionals for nations. So of course, the agency in reviewing something that has been presented to them as we'd like to bring an FTCA claim is going to look for examples of medical negligence treatment is treating physicians negligence. And so that is what they were asked to analyze they found no fault there and in fact the plaintiff has stipulated there's a position of Dr. Pupila stipulated, they're not saying Dr. Pupila is treating physician or the treating physicians nurse were negligent in any way. And the second response your honor with respect to this letter is I want to be very clear that we, when the district court made the determination here it looked at not just the complaint but also the jurisdictional discovery. And so, it, you know, on the face of the complaint you might wonder well is delay in fact caused by treating physicians and that's what the agency did in this administrative exhaustion process they looked at what was their improper diagnosis was their negligence on behalf of the treating physician that caused this delay, and they found none, and it became clear in the course of discovery jurisdictional discovery that the complaint wasn't about his treating physicians it was about administrative professionals, and that is why the government has brought this motion. Council, thank you. Let me ask you the same question that I asked your colleague, and that is, first of all, would you agree that at some point. If the VA, which has sole responsibility for scheduling these appointments takes some ridiculous amount of time let's just say to make it clear again five years that they that the VA commits malpractice would you agree with it. So, if the VA takes extensive delay and scheduling then yes it can be malpractice but it's still malpractice that must be channeled through the BJRA, and that, and that, let me ask you something, if it's malpractice. Why can it not then be handled under the federal court. Because the BJRA is a broad, broad devolution of jurisdiction, it very clearly says that any questions of law or fact related to the position of benefit are left to the exclusive province of the secretary with again. In this case, how is it related to a benefit, especially since everybody. I mean there's nobody here that's suggesting that he wasn't entitled to any of the treatment they ultimately received I mean there's really not a question here of whether this was a benefit that he could receive. That's not an issue. Well, Your Honor, the reason why it's related to benefits is because the delay that he claims is delay of authorizing him to receive treatment paid for by the VA at non VA hospitals, and although and as this were recognized in millbauer and other sports appeals have also recognized a delay in treatment is no different delay in processing these kinds of places no different than a denial of these claims and so it's not already seen it but you've already, but you've already conceded that it is when you agree with me that at some point, a delay becomes so long that it crosses into the realm of medical malpractice. So, but Your Honor the important caveat there is that it still needs to be channeled through the BJRA because it's related to the provision of benefits, and I would point your honor to to millbauer in which that exact same theory was presented the plaintiff there said that the delay in that case was no power is not finding precedent on this, it is not finding your honor but it's consistent with every other court of appeal to address the question, you know, the Ninth Circuit, let me tell you the problem I have with that we all know, particularly from our prison cases that sometimes delay in treatment is basically no treatment. It is worse than no treatment delay in treatment. And to say delay in treatment, I mean, I am surprised that you answer here because you're basically saying, even if it's a year's delay, I don't think it has to be five. I think this actual case shows delay in treatment, this is a very serious thing you get that and then you do what they did here. That is, in effect, no treatment for cancer, what they did here. And I don't know how and not timely treating. You could say well that was just a delay in scheduling and blah blah blah, what it is and he's got this in one paragraph of his complaint 38 D, I agree his complaint could have been better phrase, but he's got failing to timely act in the face of the test results, the symptoms and resulting in inexcusable delay in the diagnosis and the treatment. That's what this case is about. And that seems, but if you, that seems to be malpractice right there in the complaint. I think there are two things to say here. First, Your Honor is assuming that the delay is in fact caused by the VA which is, of course, this is that emotion to dismiss these are still factual disputes and if this were to go to trial, the VA does have causation defenses as to what what causes like, of course you did. I totally agree with that. I get your honor. Your question seems to assume that there's no remedy available for plaintiff in this situation and that's simply not true, but there is Congress through the video right not only divested courts of jurisdiction but also created the 1151 process which is a process by which veterans who are injured by the VA health care veterans, including, you know, failures to treat that may be caused by scheduling like this one was. They can bring a claim for 1151 benefits their monthly benefits that are paid for to the veteran. The standards for causation are lesser under this is it's not as adversarial as the FDA system. It is designed to allow veterans who have claims like this to try and bring to try and bring things really to try and get relief. But what's important is that it is the exclusive remedy when Congress created the special remedy and created lower standards of proof. It made it the exclusive avenue for claims like this and divested district courts of jurisdiction under the FDA, and at bottom that's what this case is about there is an avenue for plaintiff to try to see for me, but it's not the FDA. He framed his complaint as a simple negligence claim rather than medical malpractice. In other words, the doctors didn't do anything wrong, but it was the administrators of the Veterans Administration who were negligent. They had a duty that was reached that caused my injuries, and I was damaged, thereby couldn't be framed as complaint as a straight up negligence claim rather than a medical malpractice claim. And that would be a, I believe that's a fair characterization this complaint but that would be a negligence complaint with the VA was negligent in administering the process for proving people for treatment and paying for that treatment, and because that the actual policy the VA had followed. What is that policy and is it a reasonable one? These are all... He might want to frame his complaint differently than how you're framing his complaint. If we were to affirm, and I know that the district court dismissed the complaint without prejudice. If we were to affirm, would he have an opportunity to go back to the district court and recraft his complaint? So, it's possible, Your Honor, but I know that there would be a couple of difficulties he would have. The first is, of course, discovery has completed in this case, and he has not presented in discovery any clear allegation that his treating medical professionals or evidence that his treating medical professionals submitted... The complaint was dismissed, but there was discovery before the complaint was dismissed? There was jurisdictional discovery in this case and it was the facts that came out through discovery after discovery had completed that made the government realize that subject matter jurisdiction was lacking here because at bottom, his complaints were in fact about administrative problems in the processing of benefits. He did not identify any negligence on the part of his treating physicians. I guess my concern is, could he craft a complaint in which he alleges that the Veterans Administration deviated from the standard of care that he was entitled to in the administration of his care there without alleging, without relying exclusively on the delay in providing treatment? I'm sorry, Your Honor, could you repeat that once more? Well, I'm wondering whether or not he could more carefully craft his complaint to allege that the Veterans Administration deviated from the standard of care that he was entitled to in treating his cancer. So, again, I hesitate to give the answer to that only because there has been discovery in this case and the discovery, which the district court reviewed in full was part of what led the district court to correctly recognize that this is not a complaint about his treating physicians, it's a complaint about the administrative process. If that had been different, in a hypothetical situation that were different than this one. Could he allege negligence on the part of Veterans Administration employees without relying exclusively on malpractice by the doctors who treated him? If the negligence is wrapped up in the benefits determinations and the question of whether and when he can be approved for non-VA care, then no, that's the sort of thing that has to go through the BJRA. And what you're saying is, I'm going to follow up on Judge Wilson to make sure we got it. So, if it's outside consult and anything that's outside consult, no matter what it is, would be a benefits claim. So, what I'm saying is that if he is alleging negligence on behalf of his treating physician, so for example, this would be a different situation than what he's alleged and what the facts are here. If he said that his treating primary care physician said, I don't think this is serious, and you don't have to rush on this. We know what would be, I'm asking about this case. You brought up the outside consults. So, anything that's outside consults, approving going to outside consults are scheduling. Basically, you're saying anything that's scheduling related, no matter how long it's scheduled, it is going to be a benefits claim. As this court held in Milbauer and as other courts have recognized, when we're talking about the VA's approval for... Can I get an answer to my question? We're talking about scheduling. Somebody says you need a PET scan. Please just listen. Somebody says you need a PET scan, somebody says you need ABC. The VA is notorious for delay, and you're saying any of the scheduling things like that are going to be covered by the VGRA. Is that what you're saying? Yes, because scheduling is bound up in the benefits. That's what I'm just trying to say. So, anything that's scheduling, delay in scheduling, surgery, inside or outside. Let's clarify that. Whether it's inside the VA or outside the VA, it's going to be all part of the jurisdiction that the federal courts have no jurisdiction over. So long as the delay is actually due to administrative professionals, if this were a case in which the scheduling was in fact the fault of a treating physician because the treating physician made an inappropriate diagnosis or said don't worry about this, gave that poor guidance... That's not about scheduling. That's about improper diagnosis. We have a correct diagnosis here. Let's assume there's a correct diagnosis. I believe that's the appropriate line to draw. If it's in fact about the treating physician, the treating physician's diagnosis or his guidance that he gives the administrative physicians, that's the sort of thing that can be brought on to the FGCA. But if it's about the administration's processing, determining when someone can get treatment because that determines when they get paid. Importantly, Plaintiff has said... It seems that's the heart of the matter here is medical care. Medical care. Just what the doctor diagnosis is medical care of the people. I mean the doctor's not going to schedule it. Is medical care provision of medical care have a component that deals with timely treatment. I mean, where do you put the timely treatment part, the scheduling of it. Do you put it on the side. Oh, that's just administrative, that's benefits, or does it come within in certain situations. Part and parcel of the medical care. And you really draw that line so that no matter what it is, no matter how long, gets back to the earlier question. If it's scheduling, an administrative person has to do it, no doctors scheduling, people or agents do it for him. You're saying all that's never covered no matter how long it takes, whether it's inside the VA or outside, and that's not medical care. That is, that is, that is the line that, you know, this court drew in Milbauer that other courts have drawn, Ninth Circuit drew... Well, other courts have not drawn it, other courts have said that's wrong, but I don't know the answer. No, Your Honor, I don't, I think, I think TUNAC in the Ninth Circuit very clearly said if we're talking about the VA's provision of treatment through scheduling, that's tied up in benefits and that has to go through the VJRA. But more importantly, Your Honor, I'd like to, I'd like to push back a little. I think this case is an easier one than the difficult line you're trying to draw, because we have had complete discovery in this case, because we have seen that at bottom, the plaintiff has, you know, through the depositions, asked people questions like, what was the VA's process? How long did they normally take in trying to make decisions about whether outside care was appropriate? Did they follow it here? You know, was there reasons why they breached that? And the answers to those questions are wrapped up in the sorts of questions that the district court held, and correctly, this court held in Milbauer, are inherently wrapped up in questions of law and fact about the provision of benefit. The benefits specifically being whether and when a veteran is entitled to the VA to pay for his care. And that is the reason why this is the sort of thing that has to go through the VJRA, because if he wasn't asking for the VA to pay for his outside care, if he was paying for it out of pocket, we wouldn't have these processing delays. And of course, that's why it's inherently inexorably entwined with benefits determinations that must go through the VJRA. I see I'm over time. I'm happy to answer any further questions. But if there are none, we ask that you affirm the district court. All right. Thank you, counsel. And Mr. Adams, you have reserved some time for rebuttal. You're on mute, Mr. Adams. Sorry. Yona, it strains credibility to understand the government's position that when they responded to our claim for medical negligence, they did not anywhere in that response say, this is a benefits case. This case is governed by the Veterans Judicial Review Act. Mr. Smith, go file a claim for disability. Never said that at all. Now they take the position, and what the government is just simply doing here is trying to hide behind a process that they have set up that if this court follows, will simply make it impossible for there ever to be a case for failure to time the treat or failure to time the That's the scheme the VA has set up. Is the government really arguing in this case about scheduling Mr. Smith's surgery? The government didn't have to schedule his surgery. His doctor scheduled his surgery, but the problem is he couldn't schedule it until the government authorized it. And they did not timely authorize it. They didn't authorize the surgery until May 13th, the day after they got a letter from a congressman fussing about not giving Mr. Smith the care he deserved as a veteran of this country. And here we are, this man was diagnosed with cancer in March, and we're talking about scheduling. The surgery was not authorized, and it had to be authorized in order for him to get it. This is not about a delay. This is not about benefits. This is a medical negligence case. If the same thing had happened at Emory University or any other medical center, it would be a medical negligence case. And the VA has to—the VA is a hospital. It has an administrative side like every hospital in this country. We had a nurse that knew he was not getting surgery. We had a nurse that knew he needed a PET scan and a full workup and didn't do anything about it. We have a doctor that didn't do anything about it. But what happened? A congressman writes a letter, and they do something about it. This is not about scheduling at all, and it's an attempt to get this court to fall into the trap of just looking at the plaintiff's complaint. And I will submit to you, we filed a medical affidavit with our complaint. And if you look at that affidavit, it states that the care Mr. Smith received was below the standard of care all across this country. Our expert gave testimony in his deposition, and he outlined the ways in which this treatment or non-treatment, as Judge Hull stated, fell below the standard of care. This case is not about any benefits whatsoever. And even this, medical judgment is required in scheduling. If you want to call it a scheduling case, medical judgment is required in scheduling. And I would point to what the court in Onestos stated. This is a case that we cited in our brief. In that case, the government argued, as the district court found here, that despite being labeled a tort claim, it involved a benefits determination since the challenges were made for Faye to follow internal policies and involve medical benefits decision-making. The court in that case said this, if this court were to accept this expansive interpretation of benefits determination, a person could never sue the VA in the district court under any circumstances for failure to provide medical treatment. The result seems at odds with the statute that only requires that the secretary must decide all questions affecting provisions of benefits. To read the statute to preclude the district court jurisdiction of this claim would lead to extremely broad reading of what constitutes benefits determination. And that's where we are in this case. This is not about benefits. And the government says, well, he can go file a disability claim, but he can't get any compensation. He can't get anything at all for the pain and suffering that he's been through. He can't get anything for the lost chance of cure. He can't get anything at all other than a monthly stipend, which does nothing to compensate him for the, excuse me, the pure hell that the government has put him through by not providing him the treatment that any other person in this country would have gotten. And he's a veteran, and he deserves it because cancer can't wait. Thank you. Thank you, counsel. That concludes our arguments on this case.